My next case for argument is Tempest Horsley v. Jessica Trame, Mr. Mag. May it please the court, counsel. My name is Thomas Mag and I represent Tempest Horsley. It's a case of I think first impression, at least in this circuit, that is the application of the 2nd and 14th Amendments to persons between the ages of 18 and less than 21 years of age. Illinois has a regulatory regime that requires, generally speaking, subject to exceptions not relevant here, a firearm owner's identification card in order to possess a firearm lawfully within the state of Illinois. In order for a person less than 21 years of age to obtain a firearm owner's identification card, colloquially called a FOID card, requires a written consent of either a parent or a legal guardian. Under Illinois law, a non-disabled person has no legal guardian. They are, under state law, age of majority, can get married without parental consent, own contracts, own land, the like. A guardian cannot be appointed for them unless they are disabled, which arguably would then disqualify them from lawfully possessing firearms under federal law. Tempest Horsley applied for a firearm owner's identification card when she was 18 years of age. Her mother would not sign the firearm owner's identification card. I believe the record would support that her father, who Tempest Horsley has not seen in many years, is a convicted felon and therefore, under state law, would be ineligible to sign the FOID card in any event. This case proceeded, was filed in the... Before you go on, one of the things, you didn't pursue review with the director of the state police, right? That is correct. And isn't that important? Because if the director had approved her, then this appeal wouldn't even be necessary. Illinois might have granted your client's request without a parental signature if she filed the appeal. That is conceivably possible, however, Patsy v. Florida Board of Regents, which was an O'Connor decision out of, I believe, 1982, makes clear in 1983 cases you do not have to exhaust administrative remedies such as that in order to file 1983 actions. That is, in fact, the holding of the district court. District court ruled that there was no legal requirement to exhaust such an administrative remedy. I recognize that in the, for instance, Prison Litigation Reform Act cases, that there is a requirement, but this is not such a case. This is a straight-up 1983 case and thus no requirement to exhaust administrative remedies. But it's not really an exhaustion issue, right? It isn't an issue of whether or not she's actually been harmed at this point until she's actually been told no. And wasn't her original denial actually not a denial, but her form was returned to her as incomplete? So until she's actually gotten the final decision that she's not going to get the card, how has she been harmed? She's been harmed because the Firearms Services Bureau of the State Police, which the defendant in this case is the head of, refuses to process the form without the signature of the parent, which is unavailable in accordance with state law. Therefore, she cannot obtain a firearms owner's identification card, if so facto, would be a criminal if she were to possess a firearm in the state of Illinois. It is, quite frankly, no different than the Planned Parenthood case cited in the brief, where Missouri at one time had a statute that required parental consent in order to get an abortion for a 17-year-old, and that was stricken down. So, in direct answer to your question, how has my client been harmed? She's been harmed that she is unable to exercise her right to keep and bear arms without jumping through hoops, that the district court said there's nothing in the record that anybody's ever tried it, much less that it's been successful. Well, if nobody's ever tried it, did she have any reason to think it would be futile to do so? Well, again, under Patsy, it's not necessary to do so, but there appear to be no regulations that come into play on what standards to apply, and the statute in question appears more properly set forth on how to restore civil rights to convicted felons and the like that can possess firearms than directed to persons less than 21 years of age that have an unwilling or unavailable parent. So, let me ask you this. Would you agree that Illinois could ban somebody 14 or 15 from having a gun? I don't know if they could interpose a complete blanket ban. I think that... So, someone 14 or 15 could have a gun without permission of their parent? I think a permission of a parent is... Or even with permission of the parent, that would be even. With permission of the parent, I'm not sure they could. Without permission of the parent, they may well be able to. But we're not dealing with a 14 or 15. Yeah, but the point is, why shouldn't we defer to the state's judgment that for Illinois, 18, 19, or 20-year-olds would have to go through more of a process before they can possess a gun and get such a signature? Well, the reason we shouldn't defer to the state's process is because we have a constitution that sets forth minimum guarantees of constitutional rights, and the mere fact that the state... Well, there's obviously nothing in the constitution about minors having guns. Well, again, we're not talking... ...that they found in the constitution is subject to all sorts of exceptions. Granted, there are exceptions. Why don't you want... Why do you want to have these juveniles having guns if their parents won't permit them? Parents know more about them than the Bureau of Firearms does, right? With all due respect, we're not talking about 12-year-olds or 14-year-olds. Why do you think a parent would forbid an 18, 19, or 20-year-old to have a gun? Well, let's assume that that parent is the head of a major nationwide gun control organization. It's not in this case, but it would be exceedingly unlikely that such a parent... Well, it's not in this case. Why don't we deal with this case? Okay, and this... Is she one of these anti-gun people? Lefties, you know, want to turn over the country to the communists or something, or what? Well, I don't know if she wants to turn over... You don't know? Maybe she is, do you think? I cannot speak to my client's mother. Iranian agent? Who knows? Could be anything. It's frightening. Disarming Americans, that's what she's doing. Well, I don't know that she does... I don't know the reason. Why shouldn't you have some burden of showing that this is some malicious or insane act by the mother? Because the Supreme Court in Planned Parenthood said in the abortion context the reason on the parent is irrelevant. The parent doesn't get the veto right over the child. And in Planned Parenthood, we weren't even dealing with an 18, 19, or 20-year-old. We were dealing with a 17-year-old. And I'm not arguing that a 17-year-old parental consent for a firearm would be unconstitutional. I'm only arguing as to 18, 19, and 20-year-olds. It's quite frankly irrelevant whether or not a person that is not the applicant in question thinks that the applicant in question, for any reason or no reason at all, should not be able to exercise their Second Amendment rights. I don't know if your parents are still alive today. My parents? No, they're not. I didn't want to assume. But if they were, I don't think it would be fair to say that they get a veto right over what books you get to read or your exercise of the Second Amendment right or the like. I'm not 18 anymore. 18-year-olds vote. 18-year-olds serve in the military. Yeah, but we're talking about a weapon that could be dangerous. And the data suggests that the brain of young people that are 16, 17, 18, 19, 20, not fully developed, lots of issues with that. And so why can't the parent, who is, I think Judge Posner said, knows the child best, be given that final check? The state doesn't have any interest. That's basically what you're saying. Because the parent has no interest, because at 18, the child is emancipated. It's an adult. Again, we're not talking about 12-year-olds or the like. We're talking about adults who can be drafted in the military if a draft is instituted. And any of it can serve in the military and the like. Of course, they're drafted. They're trained in how to use guns, right? Well, I mean, there's nothing that says that there couldn't be a training requirement. We're not talking about a training requirement. We're talking about whether a parent gets a veto right over an adult child. They don't get a veto, because you can still appeal, and she chose not to. So it's not a veto. It's a way of making the process go more quickly if your parent consents. And if they don't consent, then you can still ask for permission from the state police to have the gun. Which, again, under Patsy, I'm out of time here. No, that doesn't get you off the hook. Answer. You can answer a question. The veto right, under Patsy, the U.S. Supreme Court said you are not required to exhaust such administrative remedies. There is no requirement in a civil rights act such as this to go through such hoops on a plainly impermissible imposition that, at least in the abortion context, was struck down in Planned Parenthood. So then why should there be even a requirement to have to go and fill out the form for the card? I mean, there is always going to be some process and some restriction on your ability to lawfully own the weapon, and the process is just slightly different for this person because she's between 18 and 21, but she's not banned. She just has a perhaps more rigorous process. I don't think, again, that that's an exhaustion issue. If it were an exhaustion issue, it would apply to anybody, regardless of their age, if they wanted to own a firearm without having to go and get the state's permission. The constitutionality of the FOID Act as a sum total is not before the court. There's certainly an argument that the FOID Act itself and the obligation to get a FOID card is a questionable constitutionality, but, again, that's not before the court. Well, no, and that's been decided a long time ago. I'm unaware of that decision, at least since Heller and the Supreme Court's ruling on the Second Amendment. Okay, well, thank you very much. Thank you, Your Honor. So, Mr. Sultanzadeh, I'm probably not pronouncing that. Good morning, and please the court. I'm Stephen Sultanzadeh from the Illinois Attorney General's Office on behalf of the defendant. Your Honors, plaintiff's argument is based in large part on a misunderstanding of the statute, as the questioning got to during plaintiff's argument here. This law is not a categorical ban. Illinois doesn't say that people under the age of 21 cannot have firearms. This is just a parental consent requirement that has a bypass, and I think it makes sense to talk about the abortion cases up front  In Danforth, the court did strike down that particular law, but in subsequent cases, the Supreme Court has affirmed more than once abortion parental consent requirements that had a bypass. So if we're going to import those abortion cases here, then this law is certainly constitutional because it has a bypass. If someone cannot obtain a parent's signature, is unable to, or the parent's unwilling to sign, then they can go to the director and ask for a FOID card. So this court, this is far from a categorical ban. Is that what an orphan would have to do? Yes, Your Honor, I believe so. And then if someone said, you know, I'm being stopped by my ex-boyfriend or something like that, they could provide that condition to the director? Absolutely, Your Honor, that's right. There's a process by which they could present their reasons for not having a parent's signature and why they need a FOID card. This court has already affirmed categorical bans that were far more restrictive than this law here. In U.S. v. Williams, U.S. v. Yancey, U.S. v. Skoyan, in an en banc decision, those were all categorical bans. This court applied intermediate scrutiny and found that they were constitutional. They withstood that scrutiny. This ban here is less restrictive. In addition, in this case, the historical evidence overwhelmingly shows that individuals under the age of 21 were not within the scope of the Second Amendment, as it was commonly understood by the public at the time that the public adopted the right in 1791. And that's what Heller tells us to look at. Under Heller, we look at the scope of the constitutional right by determining the public understanding of the right at the time that they adopted the right. And to understand that public understanding, we can look forward in time. We can look at courts, legislatures, and we can look at... Well, but in the 18th century, knowing what people's ages were would not have been that easy, right? And did they really care whether you were 18 or 21? I can't believe it. Your Honor, I think it is true it would be more difficult to assess age. But we do have legislation. I can't say that the public as a whole, everyone who was part of adopting that right, cared about the difference between 18 and 21. But we do know legislatures, in the wake of the adoption of the Second Amendment, did care. We have, in the relevant period, and Heller says we can look all... Is there anything in the Constitution about age of majority? There's nothing in the Constitution specifically about age of majority. 18, 21? No, Your Honor. I don't think they were interested in distinctions like that. I'm sure a lot of people, you know, 18-year-olds would have guns for hunting and so on. I think 18-year-olds were considered adults. Well, Your Honor, I think there are a couple of answers to that. First, the Second Amendment, as Heller tells us, was the codification of a pre-existing right. So there were contours to that right at the time it was adopted. We're not just looking at the text of the Second Amendment as written whole cloth at the time it was adopted. We're looking at the codification of a right. But did those 18th century people really distinguish between 18 and 21? Well, we know from 19th century legislatures that... Yeah, well, how about 18th century? We don't want to talk about, you know, 1791. Well, okay. I think we do know from 1791, from Blackstone, which is one of the sources that Heller most heavily relied on, that there is a distinction at age 21 in the founding era. You're essentially an infant. That's the word that Blackstone uses, and that's the word other sources have used. But look, England was completely different from the United States, right? England was high population density. Most of the land owned by aristocrats, not allow other people on the land. America, you have, you know, the frontier, and you have... Everybody lived outside of the city would have a gun. They'd have to have a gun, whatever their age. Your Honor, it's true there's a distinction there. And that's why, for good reason, legislatures could allow 18-year-olds or people even younger to have firearms, and they can today. Illinois tomorrow could decide we're going to let people younger than 21 have guns with no restrictions. They haven't chosen to do so. The question is, what was the scope of that constitutional right? Look, I have no quarrel with this parental consent requirement. I just don't see how you can root it in what people were thinking in the 18th century. That's, of course, a general problem with constitutional law, right? Completely different civilization there. Different values, different understandings, right? Yes, Your Honor. I mean, what we have as a guide at this point is Heller. And Heller tells us to look at that right as it was enshrined. And we think the historical evidence suggests that minors under 21 are outside the scope. But in any event, this Court has already applied intermediate scrutiny to all the categorical bans it has faced, categorical bans on felons, people with misdemeanor convictions for domestic violence, and for drug users. It applied intermediate scrutiny in those cases, and it found those bans constitutional. Here we have a less restrictive ban. We have strong, even compelling, interests to prevent armed mayhem and ensuring just compensation for victims of firearm violence because parents who sign, who give consent, are liable if the minor then injures somebody with the firearm. And we have a law that's closely related to those very compelling interests. We've cited substantial research showing that cognitive development in areas of impulse control, risk assessment, decision-making, these don't really finish developing until early 20s, maybe even mid-20s in some cases. And there's a bypass here. So this is a very narrow law. Someone who can't get a parent's signature can go to the director and nonetheless obtain a FOI card if they can make a sufficient showing. So what we have is a very, very narrow law that's there to, that's related to these very, very strong, compelling interests of the state. For that reason, it easily passes. The intermediate scrutiny this Court has applied consistently in these cases and would even withstand a heightened level of scrutiny. Your Honors, this is a question of first impression in this Court, but this Court doesn't need to break any new ground to decide this case. It has affirmed categorical bans in the past, and this is far less than a categorical ban. For those reasons, under Heller and under this Court's precedent, this Court should affirm the judgment of the District Court. Okay, thank you very much, Mr. Stonowitz. Mr. Maughan, your time has expired, but you can have another minute if you'd like. Thank you, Your Honors. I would simply note, as far as categorical bans go, the categorical bans that this Court and other courts have upheld are all categorical bans of persons that either have some identified, articulatable mental defect or have taken some action contrary to the public good. Drug addicts, felons, domestic violence, misdemeanors. In this case, the record is undisputed. My client is none of those. She's not only never been convicted of anything, she's never been arrested for anything. But suppose she had been. Then what? How would they even know it, under your view, since she's 18 or however old she is? Since she's 18, she can just ask for... They don't give mental tests, do they, to people who... Generally not, but... Pardon? So then, you know, she could have a mental illness and nevertheless she could get this. There'd be no screening, on your view. That's true. She could have, but there's no evidence in this case that she does. No, of course not. But the question is the impact of the general principle you're arguing for. I think basic due process would require some sort of finding with notice and an opportunity to be heard. Before you could just say, well, you could potentially maybe have some sort of mental defect. We don't know. Sounds like a lot more cumbersome than parental consent with a bypass that your opponent emphasized. Unless, for instance, the parent themselves has some sort of mental defect or was unaware of it or as far as the financial compensation goes, that the mother was in bankruptcy, as she is in this case. And I see that I'm out of time. Okay. Well, thank you very much to both counsel. Thank you, Your Honor.